**IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOHN HAMRIC, On Behalf of Himself and All Others Similarly Situated, ) ) ) | Case No. 1:16-cv-01216 |
| Plaintiff, ) ) | DISTRICT JUDGE JAMES GWIN |
| v. ) ) ) | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND FOR THE ISSUANCE OF COURT-SUPERVISED NOTICE** |
| TRUE NORTH HOLDINGS, INC., et al., ) ) ) | |
| Defendants. ) ) | |

## I.    INTRODUCTION

Plaintiff John Hamric ("Plaintiff") alleges that "Defendants required Plaintiff and other current and former Assistant Managers working at True North gas stations owned by the Defendants to perform fuel price surveys of competitor gas stations without pay before clocking-in and after clocking-out for their scheduled shifts." (Memorandum, p. 1; Complaint, ¶2).  Thus, Plaintiff seeks to certify a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), consisting of:  "All hourly-paid Assistant Managers who are or have been employed at any time since May 20, 2013 at True North gas stations owned and operated by Defendants and their franchisees."  (Complaint, ¶26).

## II.    STATEMENT OF RELEVANT FACTS

Defendant True North Management, LLC ("True North") currently employs approximately 86 Assistant Managers at 104 stores in Ohio and 5 in Illinois.  (See Affidavit of Ryan Howard, ¶3, "Howard Aff.", attached hereto as **Exhibit "A"**).  True North does not have any employees in Michigan. (*Id*.) Defendants True North Holdings, Inc. and True North Energy, LLC do not have any employees, did not employ Plaintiff John Hamric ("Hamric") and did not employ any individuals that he seeks to represent.  (*Id*., ¶4). When fully staffed each True North

store has a Store Manager, an Assistant Manager, and Customer Service Representatives (ie. cashiers).  Some stores also employ Shift Manager(s).  The Store Managers are exempt, salaried employees. (*Id*., ¶5).  The Assistant Managers, Shift Managers and Customer Service Representatives are non-exempt, hourly employees.  CSRs and Assistant Managers do not clock out for breaks during their shifts. (See Affidavit of Kathy Gorski, ¶4, "Gorski Aff.", attached hereto as **Exhibit "B"**).   Rather, CSRs and Assistant Managers receive paid breaks during their shift, including a paid break to eat lunch or dinner.  (*Id*.)

Plaintiff was hired by True North in the position of Assistant Manager on or around October 12, 2015 for Store Number 519, located at 6903 Angola Road, Holland, Ohio.  An Assistant Manager is generally scheduled to work three (3) days during the week from 3:00 p.m. to 11:00 p.m. and Saturday and Sunday from approximately 5:30 a.m. to 1:30 p.m.; whereas a Store Manager is generally scheduled to work Monday through Friday from 5:30 a.m. to 1:30 p.m.  (Gorski Aff., ¶3).  Plaintiff was generally scheduled to work on Monday, Tuesday, and Wednesday from 3:00 p.m. to 11:00 p.m. and Saturday and Sunday from 5:30 a.m. to 1:30 p.m. (*Id*., ¶10).

True North conducts price surveys of regular unleaded gasoline at competitor gas stations in the direct vicinity of each True North store. (*Id*., ¶12).  True North does not survey the price of mid-grade or premium unleaded gasoline. (*Id*.) The number of competitor gas stations surveyed by a True North store depends on how many competitor gas locations are located in the direct vicinity of the True North store.  (*Id*.)  The Store Manager is responsible to conduct the fuel price survey of competitor gas stations on Monday through Friday.  (*Id*., ¶13). Specifically, the Store Manager conducts the fuel price survey on the way to work or immediately following his/her shift, Monday through Friday and, again, when the Store Manager makes the daily bank deposit on Monday through Friday prior to the end of his/her shift.  (*Id*.)

-2-

An Assistant Manager only conducts fuel price surveys immediately before or after the start of his/her shift on Saturday and Sunday and, again, when the Assistant Manager makes the daily bank deposit on Saturday and Sunday prior to the end of his/her shift. (*Id.*, ¶14).  Assistant Managers do not conduct fuel price surveys of competitive gas stations Monday through Friday unless the Store Manager is off.  (*Id.*, ¶11). Importantly, on Saturdays and Sundays, Assistant Managers are only authorized to conduct fuel price surveys prior to the start of their shift if the Assistant Manager drives by the competitor's gas station on their regular route to work and is able to safely observe the price of the regular unleaded gasoline displayed in large print on the competitor gas station's sign located along the road while still driving.  (*Id.*, ¶15).

When conducting the fuel price survey, the Assistant Manager does not stop at the competitor's gas station to survey the prices on the individual pumps. (*Id.*) If the competitor's gas stations are not located on the Assistant Manager's direct route to work, it is True North's policy that the Assistant Manager clock in prior to conducting the fuel survey. This would entail the Assistant Manager arriving at his/her store and clocking in no more than five (5) minutes prior to the start of his/her shift and then leaving the store to conduct the survey.  (*Id.*) The competitor gas stations surveyed are nearly identical in price for regular unleaded gasoline.  If not identical, then the price may vary by only a few cents.  (*Id.*, ¶16). There would be no difference in price that would require or warrant an Assistant Manager or a Store Manager to stop to write down the competitor's price for regular unleaded gasoline. (*Id.*) The competitor's price for unleaded regular gasoline is then logged into a system called survey monkey at the True North store after the Assistant Manager has clocked in for his/her shift. (*Id.*, ¶17).  Assistant Managers do not conduct any fuel price surveys while in training.  (*Id.*, ¶8).

The method in which Assistant Managers conduct fuel surveys on Saturdays and Sundays varies from store to store.  (*Id.*, ¶18).  For example, Speedway's daily pricing is available on

Speedway's website.[1] Thus, the price survey would be conducted after the Assistant Manager clocked in for his/her shift. (*Id.*, ¶19)  Assistant Managers are also known to utilize Gas Buddy, an on-line application that provides daily pricing for gasoline. Even though Gas Buddy is not authorized by True North for use in conducting surveys because of its known inaccuracy, it is still used by some employees. (*Id.*) Another method utilized by Assistant Mangers to obtain competitor prices on Saturday and Sunday are calling another True North store location for the information. (*Id.*)

Some store locations, including Store number 509, survey competitor stations which are located within sight distance of the Store. (*Id.*, ¶21). The Store Manager simply walks out of the store to view the competitor's price of regular unleaded gasoline on Monday through Friday. (*Id.*) The Assistant Manager does the same on Saturday and Sunday while on the clock.  (*Id.*)

An Assistant Manager does not conduct a fuel price survey after his week day shift ending at approximately 11:00 p.m. and, therefore, does not report any competitor fuel prices to his/her Store Manager after 11:00 p.m. at night. (*Id.*, ¶23).  The only time that an Assistant Manager would be responsible to conduct a price survey on a weekday is when the Store Manager is off work. (*Id.*, ¶24).

Even though Plaintiff was hired in as an Assistant Manager, all Assistant Managers first undergo CSR training if they were not previously employed as a CSR by True North. (*Id.*, ¶7). Plaintiff had not worked for True North prior to being hired on or around October 12, 2015. Plaintiff was involved in CSR training for the first week after his hire.  (*Id.*)  Then, Plaintiff began the Assistant Manager training at Store Number 504 in Toledo, Ohio. (*Id.*)  Thereafter, on or around November 2, 2015, Plaintiff was transferred to Store Number 509, located at 5473 Monroe Street, Toledo, Ohio to continue training.  (*Id.*)

---

[1] For illustrative purposes, see Speedway – Gas Price Search sheets, attached to Gorski Aff. as Exhibits 1 – 3).

Importantly, Plaintiff was not asked nor was he authorized to conduct fuel price surveys on Monday, Tuesday and Wednesday.  (*Id*., ¶11). If Plaintiff was conducting fuel price surveys on Monday, Tuesday and Wednesday, then he was conducting the alleged surveys without the knowledge or authorization of his Store Manager. (*Id*.) At no time did True North have actual or constructive knowledge of Plaintiff (or any other employee that he seeks to represent) conducting fuel price surveys off-the-clock. (Howard Aff., ¶6).  Indeed, True North has a clear written policy that employees are not to work off-the-clock. (*Id*., ¶7).

Assistant Managers are not scheduled for overtime.  (Gorski Aff., ¶24).  Any overtime must be approved by a Store Manager. (*Id*.)  In Plaintiff's case, he was not authorized to work overtime.  Any overtime that Plaintiff received was due to his waiting until his shift was over to complete the duties that should have been completed by him during his shift. (*Id*.)  Plaintiff received coaching from his Store Manager for clocking out after scheduled hours and incurring unnecessary overtime. (*Id*.)

## III.    LAW AND ARGUMENT

### A.    PLAINTIFF IS NOT "SIMILARLY SITUATED" SO AS TO GIVE RISE TO A COLLECTIVE ACTION UNDER THE FLSA.

#### 1.    Plaintiff Fails to Establish that He and the Potential Collective Action Members Are Victims of a "Common Decision, Policy or Plan."

Recognizing that FLSA collective actions can impose a "tremendous financial burden" on employers, federal courts have held that a FLSA action cannot be conditionally certified unless Plaintiffs establish that they are "similarly situated" to the putative members as "victims of a common policy or plan that violated the [FLSA]." *Flores v. Lifeway Foods, Inc.,* 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003); *O'Neal v. Kilbourne Med. Labs., Inc.,* No. CIV.A. 05-50, 2007 WL 956428, at *14 (E.D. Ky. Mar. 28, 2007); 29 U.S.C. §216(b). More specifically, Plaintiff must identify some specific policies or plans that on their face contravene the FLSA,

which are applied uniformly to numerous employees across a wide geographical location that they seek to represent. *Bernard v. Household Int'l, Inc.,* 231 F.Supp.2d 433, 435-436 (E.D. Va. 2002). "Mere allegations are insufficient, and some evidence to support the allegations is required." *Bunyan v. Spectrum Brands, Inc.*, No. 07-CV-0089-MJR, 2008 WL 2959932 (S.D. Ill. July 31, 2008); see, also, *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 871 (S.D. Ohio 2005) (denying motion for conditional certification when Plaintiff offered but speculation to support her belief that other employees were not paid all of the money to which they were entitled).  Indeed, courts regularly deny conditional certification of off-the-clock claims where Plaintiffs do not carry their evidentiary burden. *Flores,* 289 F.Supp.2d at 1045; *Boyd v. Alutiiq Global Solutions, LLC,* No. 11-cv-0753, 2011 WL 3511085, *7 (N.D. Ill. Aug. 8, 2011); *Harrison*, 411 F.Supp.2d 862.

In order to show that Plaintiff is "similarly situated" to the putative members, he must establish that they are "victims of a common policy or plan that violated the [FLSA]." *Flores,* 289 F. Supp. 2d 1045. Plaintiff admits that True North's policy actually prohibits him, as well as other Assistant Managers, from working off-the-clock.  Plaintiff's insinuation that, notwithstanding True North's clear policy prohibiting off-the-clock work, there was an unwritten policy requiring off-the clock work, is unavailing and unsupported.  In order to ignore True North's written policy prohibiting off-the-clock work, Plaintiff must provide evidence of an unwritten policy to violate the FLSA that is contrary to True North's lawful written policy and that such unwritten policy occurred "not because of human error or a rogue store manager," but because of a "corporate decision to ignore published, legally compliant policy." *Thompson v. Speedway Superamerica LLC,* No. 08-cv-1107, 2009 WL 130069, *2 (D. Minn., Jan. 20, 2009) (denying conditional certification because the evidence offered by employer controverted plaintiff's assertion that a centralized policy required co-managers to conduct gasoline price

-6-

surveys "off the clock").  "[N]either the remedial purposes of the FLSA, nor the interests of judicial economy, would be seriously advanced if we were to overlook those facts which pointedly reflect that a collective action would be improper."  *Id*., citing *Basco v. Wal–Mart Stores, Inc.,* 2004 WL 1497709 at *5 (E.D.La., July 2, 2004) ("To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for the same prior to certification would be an exercise in futility and wasted resources for all parties involved.")

Here, Plaintiff identifies no evidence whatsoever of such an unwritten policy to violate the FLSA - much less an unwritten policy by a "corporate decision to ignore published, legally compliant policy." *Thompson*, 2009 WL 130069, *2; see, also, *e.g., Pacheco v. Boar's Head Provisions Co., Inc.,* 671 F. Supp. 2d 957, 963 (W.D. Mich. 2009) (denying certification where there was no evidence supervisors were universally trained not to follow written policy). Rather, Plaintiff simply states that True North has "a corporate-prepared and company-wide Job Description for Assistant Managers" that states that principle duty and responsibility of an Assistant Manager is to "[r]eview the stores competitive strategy with the Manager, know the competition, conduct price surveys and report the information as directed." (Memorandum, p. 3, citing "Job Description" for Assistant Managers, para. 11). Plaintiff has not identified a "common policy" that "violates the [FLSA]" - and, in fact, admits that True North's policy does not allow employees to work off-the-clock.  Specifically, True North's clock-in/clock-out policy states, in no uncertain terms, that employees may not "clock in earlier that (5) five minutes prior to shift starting" or "clock out more that (5) five minutes after your scheduled time."  (See Complaint, Exhibit B).  Indeed, True North's policy provides that "[a]ccurately reporting time worked is the responsibility of every employee."  (*Id*.)

**B.  PLAINTIFF'S OFF-THE-CLOCK CLAIMS REQUIRE A HIGHLY INDIVIDUALIZED INQUIRY.**

**1.  Each Claim Would Require An Individualized Inquiry.**

Even if Plaintiff has identified a common policy that violates the FLSA (which he has not), there is no way to know whether a putative member has performed off-the-clock work without engaging in a mini-trial for each putative member. A motion for conditional certification should be denied where determining whether putative plaintiffs are "similarly situated" will depend on a fact-intensive inquiry into each individual's circumstances. *W. v. Border Foods, Inc.,* No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *1 (D. Minn. July 10, 2006) (denying conditional certification of off-the-clock claims considering the "individualized nature of the alleged violations"); *Hinojos v. Home Depot, Inc.,* No. 2:06-CV-00108, 2006 WL 3712944, at *1 (D. Nev. Dec. 1, 2006) (denying certification because "plaintiffs' claims depend on the specific employment conditions in each store....and would likely require testimony from individual supervisory and other employees about the circumstances allegedly giving rise to the claimed violations").

The claims in this case are the anti-thesis of a collective action, and illustrate why representative actions are the exception to the "rule" that "litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2550 (2011).  Even if putative members performed a fuel price survey off-the-clock in a manner contrary to True North's policy, Plaintiff does not know when, how frequently, whether the putative member's Store Manager had knowledge, or whether the putative member was paid for it.   In order to answer these highly individualized questions, Plaintiff would have to interview each putative member, and the respective Store Manager and Zone Manager.

-8-

Plaintiff claims that he and other Assistant Managers were required to perform off-the-clock fuel price surveys before and after their scheduled shifts.  The only evidence cited to by Plaintiff is his own self-serving Declaration.  First, such conclusory statements are nothing more than mere allegations that do not satisfy the factual showing required for conditional certification and, accordingly, may be disregarded by the Court. *Ramos v. Burger King Corp.,* No. 8:11-cv-642-T-30MAP, 2011 WL 4634024, *2 (M.D. Fla. Oct. 6, 2011).  Second, the sworn testimony of the Chief Operations Officer for True North and the Zone Manager of the stores where Plaintiff worked flatly contradict Plaintiff's proffered Declaration.

Moreover, to the extent such pre-shift fuel price surveys occurred, they are the very definition of "preliminary" non-compensable time and *de minimis,* but - in any event - must be decided on an employee-by-employee basis.   Likewise, Plaintiff's purported allegations of additional travel time from individual homes to respective stores as a result of conducting fuel price surveys is hopelessly dissimilar (in addition to being legally deficient). Time spent traveling to and from worksites is non compensable under the FLSA. *Bonilla v. Baker Concrete Constr., Inc.,* 487 F.3d 1340, 1343 (11th Cir. 2007).

**2.      Whether True North Had Actual or Constructive Knowledge of Plaintiffs' Alleged Off-The-Clock Work Requires a Highly Individualized Inquiry.**

To state a claim under the FLSA, Plaintiff must show that True North had "actual or constructive knowledge" of his alleged overtime work. *Kellar v. Summit Seating Inc.,* 664 F.3d 169 (7th Cir. 2011) (finding that employer had no actual or constructive notice of employee's pre-shift overtime work, and thus had no liability under FLSA to compensate employee for overtime work).  "[T]he FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about." *Kellar,* 2011 WL 6256181 at *6. The employee must show that the employer knew that the employee was actually working. *Id.*

Here, Plaintiff has offered absolutely no evidence of True North's knowledge or awareness that Assistant Managers were conducting fuel price surveys on Saturdays and Sundays in contravention of True North's policy to only survey specific competitor's stations (depending on the store location) on the Assistant Manager's direct route to his/her store while driving and looking at the price of regular unleaded gasoline on the street sign, much like any customer would.

### 3. Whether Defenses Defeat Liability on Plaintiffs' Alleged Off-The-Clock Claim Requires a Highly Individualized Inquiry.

#### a. *Whether Offset Defeats Liability Must Be Resolved on a Case-By-Case Basis.*

A putative member's compensated breaks could completely offset any overtime claims - thereby eliminating any liability. The federal regulations provide that "[b]ona fide meal periods are not worktime," and that "ordinarily 30 minutes or more is long enough for a bona fide meal period" so long as the employee is "completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19(a). An employer who pays an employee for non-compensable time (such a bona fide meal period) is entitled to an offset for statutory liability. *Barefield, et al. v. Village of Winnetka,* 81 F.3d 704, 710 (7th Cir. 1996); see, also, *Martin v. Indiana Michigan Power Co.,* 292 F. Supp. 2d 947, 960 (W.D. Mich. 2002), citing *Barefield* ("where an employer pays an employee for time not otherwise compensable under the FLSA, the employer is entitled to an offset for compensation due under the statute.") In *Barefield,* employees brought an FLSA overtime claim for time spent during a daily roll call activity. *Barefield,* 81 F.3d at 710. The daily roll call activity occurred pre-shift, lasted approximately 15 minutes, and was unpaid. *Id.* The plaintiffs, however, received a paid 30-minute meal period during their workday. *Id.* The Seventh Circuit held that "the meal periods are not compensable under the FLSA, and Winnetka

may properly offset the meal break against the compensable roll call time worked by plaintiffs." *Id.*

Here, Assistant Managers receive paid breaks during their shirts.  The extent to which True North is entitled to an offset defense for paid break periods varies for each putative member. Indeed, depending on the aggregate amount of paid break periods received during the workweek, and each putative member's claimed unpaid wages, the offset may completely eliminate liability. See *Barefield,* 81 F.3d at 710.

### b. *Whether the De Minimis Doctrine Defeats Liability Must Be Resolved on a Case-By-Case Basis*.

The *de minimis* doctrine provides that employees cannot recover for certain work time that otherwise would be compensable.  See *Brock v. City of Cincinnati*, 236 F.3d 793, 804 (6th Cir. 2001) (recognizing that the *de minimis* work doctrine enables courts to treat theoretically compensable work as noncompensable under the FLSA when the amount of such work is negligible).  The three factors for consideration in assessing whether otherwise compensable time is *de minimis* are as follows: "1) the practical administrative difficulty of recording the additional time; 2) the size of the claim in the aggregate; and 3) whether the claimants performed the work on a regular basis." *Id.*, citing *Lindow v. United States,* 738 F.2d 1057, 1062–63 (9th Cir.1984) (holding that an average of seven to eight minutes of pre-shift activity is *de minimis*). While there is no mathematical certainty, "most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." *Lindow,* 738 F.2d at 1061-62; *see* 29 C.F.R. § 785.48(b) (rounding to the nearest five, ten, or fifteen minutes is permitted by law, so long as it does not always favor the employer). Whether an employee is subject to the *de minimis* doctrine defense, however, depends entirely upon her individual circumstances. See *Reed v. Cty. of Orange*, 266 F.R.D. 446, 460 (C.D. Cal. 2010) (recognizing that whether a particular activity is compensable and whether the time spent on activities was *de*

*minimus* are individualized inquiries by their nature). Here, any alleged time off-the-clock conducting fuel price surveys is unquestionably *de minimis* in nature.

### C. THIS COURT SHOULD DENY PLAINTIFF'S MOTION BECAUSE IT APPEARS THAT PLAINTIFF'S COUNSEL MAY HAVE DIRECTLY SOLICITED POTENTIAL COLLECTIVE ACTION MEMBERS WITHOUT COURT APPROVAL.

Although a district court has discretion to authorize notice to similarly situated employees of the opportunity to "opt-in" to the action, the giving of such notice is not mandatory. See *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482 (1989); *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 765 (W.D. Tenn. 2011). Courts have long recognized the risks of abuse presented by class actions. The United States Supreme Court has recognized that while "[c]lass actions serve an important function in our system of civil justice," they also present "opportunities for abuse." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981). The Supreme Court has further recognized that the same unique potential for abuse inherent in class action suits is also present in collective actions with respect to "misuse of the class device," *Sperling*, 492 U.S. at 171 (applying *Gulf Oil* to collective actions).

Rather than relying on the appropriate procedure for FLSA collective actions, Plaintiff's counsel appears to have circumvented this process by initiating direct contact with potential class members. The FLSA, as interpreted by federal courts, contemplates an orderly process by which the Court can determine whether any specific claim is appropriate for collective treatment. *Sperling*, 493 U.S. at 169. To the extent the Court permits any soliciting communications with the prospective collective class, such communications should be part of the collective action certification process and approved by the Court in advance. *Doe v. Advanced Textile Corp.*, 214 F.3d 1058, 1063 (9th Cir. 2000) (holding that plaintiff must file motion seeking prior court approval before sending FLSA opt-in notice to potential plaintiffs); *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1239 (N.D. Cal. 2000) (stating "[t]he court is particularly troubled

-12-

by the distribution of a 'notice' not authorized by the court"); *see also Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720, 722 (W.D. Ky. 1981) (ruling that ex parte contact constitutes unethical solicitation of clients if purpose or predictable effect is to influence individual's participation in class).

Here, Plaintiff's counsel may have engaged in improper solicitation by attempting to contact potential collective action members via Facebook before approval from the Court. Specifically, on February 24, 2016, Plaintiff's counsel solicited potential class members on Facebook.  Thereafter, on June 27, 2016, Plaintiff again solicited potential class members on Facebook, this time informing potential class members that a lawsuit had been filed and that they should contact Plaintiff's counsel to join the lawsuit.  (See Facebook postings, collectively attached hereto as **Exhibit "C"**).

### D.  PLAINTIFF HAS NOT ESTABLISHED THAT PUTATIVE COLLECTIVE ACTION MEMBERS WANT TO OPT-IN TO THE PROPOSED COLLECTIVE ACTION.

Plaintiff has failed to produce credible evidence that a class of interested claimants is waiting in the wings.  Out of a potential putative class of people, Plaintiff is still the **only** individual interested in joining this suit.  One Plaintiff is noteworthy because Plaintiff's counsel has conducted a widespread Facebook campaign to encourage participation among potential plaintiffs. Such a poor showing fails to prove that a class exists - in fact, as many courts have observed, it demonstrates the opposite. *See Thompson,* 2009 WL 130069, at *3 (certification denied where, among other matters, two plaintiffs and eight opt-ins provided, at most, evidence that a tiny fraction of the members of the putative class that may not have received some of the compensation that they were due); *Silverman v. SmithKline Beecham Corp*., No. CV 06-7272 DSF CTX, 2007 WL 6344674, at *2 (C.D. Cal. Oct. 15, 2007) (plaintiff's evidence "should demonstrate some likelihood that the proposed class members are similarly

-13-

situated and that more than a minimal number of prospective class members are interested in joining the suit").

IV.     **CONCLUSION**

      For the foregoing reasons, and those in the record attached hereto, Defendant True North Management, LLC respectfully requests that the Court deny Plaintiff's Motion for Conditional Certification and for the Issuance of Court-Supervised Notice in its entirety.

                  Respectfully submitted,

                  ZASHIN & RICH CO., L.P.A.

                  /s/*George S. Crisci*

                  George S. Crisci (0006325)
                  950 Main Avenue, 4th Floor
                  Cleveland, OH 44113
                  Tel: 216/696-4441
                  Fax: 216/696-1618
                  Email:  gsc@zrlaw.com
                  **Attorneys for Defendant True North Holdings, Inc., True North Energy, LLC, and True North Management, LLC**

## CERTIFICATE OF TRACK DESIGNATION AND PAGE LENGTH

As required by Local Rule 7.1(f) of the U.S. District Court for the Northern District of Ohio, this case has not received a Track designation from the Court. The undersigned certifies that the length of **Defendants' Memorandum in Opposition to Plaintiff's Motion for Conditional Certification and for the Issuance of Court-Supervised Notice** meets the 20-page maximum length for unassigned cases.

*/s/George S. Crisci*
George S. Crisci, Esq.
**Attorneys for Defendant True North Holdings, Inc., True North Energy, LLC, and True North Management, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **Defendants' Memorandum in Opposition to Plaintiff's Motion for Conditional Certification and for the Issuance of Court-Supervised Notice** was filed electronically with the Court's electronic filing system and will be served on all parties via the Court's electronic filing system.

*/s/ George S. Crisci*
George S. Crisci, Esq.,
**Attorneys for Defendant True North Holdings, Inc., True North Energy, LLC, and True North Management, LLC**