IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHN HAMRIC, On Behalf of Himself and All Others Similarly Situated, ) ) ) | |
| *Plaintiff*, ) ) | COLLECTIVE AND CLASS ACTION |
| v. ) ) | CASE NO. 1:16-cv-01216 |
| TRUE NORTH HOLDINGS, INC., TRUE NORTH ENERGY, LLC, and TRUE NORTH MANAGEMENT, LLC, *d/b/a* truenorth and True North Stores, ) ) ) ) ) | JUDGE GWIN |
| *Defendants*. ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND
FOR THE ISSUANCE OF COURT-SUPERVISED NOTICE**

Defendants ask this Court to deny Plaintiff's Motion for Conditional Certification (Doc. No. 9), yet fail to cite even one case from this District supporting such a ruling. At the same time, Defendants' arguments ignore binding and persuasive authority from the U.S. Supreme Court, the Sixth Circuit, and this District regarding the standard applied by courts for conditional certification of collective actions. This omission is due to the well-developed body of case law in this District interpreting and applying binding Sixth Circuit precedent rejecting every argument advanced by Defendants. Defendants failure to address or distinguish this binding precedent, or even cite a single case from this District directly on point to support their arguments, demonstrates their opposition's utter lack of merit.

These omissions stand in stark contrast to Plaintiff's affirmative showing that: (1) he was required to perform fuel surveys before and after his paid shift off the clock, Hamric Decl. ¶¶ 6-13 (Doc. No. 11); (2) he has personal knowledge of these surveys being conducted off the clock

by Assistant Managers at four stores where he either trained or worked, specifically noting his observations of and conversations with other Assistant Managers, *id.* ¶¶ 14-15; (3) True North has a written policy of requiring **_all_**[1] Assistant Managers to perform these surveys, *id.* ¶¶ 3, 6, 14-15, 17, and Exs. A and C; and (4) True North prohibits clocking in or out more than five minutes before or five minutes after an Assistant Manager's shift, respectively, virtually guaranteeing that required pre- shift and post-shift fuel price surveys will be off the clock, *id.* ¶¶ 5, 12, 16, and Ex. B. This showing meets the Sixth Circuit's lenient conditional certification standard.

## ARGUMENT

Defendants attempt to argue that conditional certification is inappropriate because:

(1) there are disputed facts and arguments about the merits of Plaintiff's Fair Labor Standards Act ("FLSA") claims related to Defendants' fuel price survey policy;

(2) resolving the merits of Plaintiff's claims and Defendants' defenses will require individualized inquiries;

(3) Plaintiff has failed to show sufficient interest by Assistant Managers in joining this lawsuit;

(4) Defendants have a stated policy of complying with the FLSA and Plaintiffs have failed to show an unwritten policy of ignoring it; and,

(5) Plaintiff's counsel have *supposedly* inappropriately solicited potential Opt-In Plaintiffs directly.

Each of these arguments fails because they are unsupported by the relevant case law and facts. Indeed, defendants did not cite a single case from this District and its arguments are in direct conflict with binding and persuasive authority from the U.S. Supreme Court, the Sixth Circuit, and this District.

First, it is well-settled that courts do not resolve disputes of fact or merits issues or make

---

[1] That this policy applies to **_all_** Assistant Managers is undisputed. Defendants quote this policy, but conspicuously do not deny its company-wide application, even though they claim that Assistant Managers do not always conduct fuel price surveys. *See* Defs.' Memo. in Opp. at 2-3, 7 (Doc. No. 21).

2

credibility determinations at the conditional certification stage.

Second, whether resolving a case on the merits requires individual inquiries as to liability, damages, affirmative defenses, or any other matter is irrelevant to certification of collective actions under controlling Sixth Circuit law. In fact, recent Sixth Circuit and U.S. Supreme Court cases confirm—over objections that certification had been improper due to individualized inquiries—that FLSA off-the-clock cases are suitable for collective treatment, *even through trial*.

Third, FLSA plaintiffs are not required to show sufficient interest from similarly situated employees to support conditional certification, and this Court has conditionally certified collective actions where there was a single plaintiff. In fact, where, like here, similarly situated employees did not work side-by-side or interact on a daily basis, imposing such a requirement would effectively nullify the collective action mechanism.

Fourth, a self-serving written or stated policy of complying with the FLSA does not defeat certification, and Plaintiffs' need not show an unwritten policy of ignoring it. Moreover, it is a fact-question whether Defendants have such a policy, and, like other disputes of fact, should be addressed after discovery at the decertification stage.

Fifth, and finally, Defendants are simply wrong in their suggestion that Plaintiff's counsel have directly solicited any potential Opt-In Plaintiffs through Facebook or any other medium. Plaintiff's counsel have thoroughly reviewed and complied with all relevant ethical requirements for attorney advertising in their Facebook advertisements, and nothing prohibits Plaintiff's counsel from engaging in ethically permissible, constitutionally protected free speech prior to conditional certification of a collective action.

In short, Defendants fail to raise a single cogent argument in opposition to Plaintiff's

Motion for Conditional Certification, and that Motion should therefore be granted.

**I.  Courts do not resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations at the conditional certification stage.**

Before even getting to their formal argument, Defendants attempt to muddy the waters by presenting an account of the facts that seeks to contradict the facts proffered by Plaintiff in support of his Motion. In doing so, Defendants ignore the overwhelming weight of authority from this District and the Sixth Circuit holding that it is improper at the conditional certification stage for courts to resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations. For example, Defendants argue that it is unnecessary to stop a vehicle to write down gas prices, that Assistant Managers did not perform fuel price surveys every shift or might have looked online for these prices, or that Defendants' policy was that, if the surveyed fuel stations were not on an Assistant Manager's direct commute, then the Assistant Manager was not required to survey the station until after clocking in. *See* Defs.' Memo. in Opp. at 3-4 (Doc. No. 21).[2] Certainly, these and other assertions by Defendants run counter to some of Plaintiff's allegations.

However, Plaintiff is not required to prove his allegations to support conditional certification because "at this [first] phase of the certification process, the Court 'does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" *Schwab v. Bernard*, No. 5:11-cv-1216, 2012 WL 1067074, at *5 (N.D. Ohio Mar. 28, 2012) (citing *Parr v. Hico Concrete, Inc.*, 3:10-cv-1091, 2011 WL 3293391, at *2 (M.D. Tenn. Aug.1, 2011)); *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011) (same); *McNelley v. ALDI, Inc.*, No. 1:09-cv-1868, 2009 WL 7630236, at *4 (N.D.

---

[2]  To the extent Defendants argue that not every Assistant Manager performed fuel price surveys, the notice process can accommodate this by simply informing potential Plaintiffs that they may join if they performed fuel price surveys before clocking in or after clocking out.

Ohio Nov. 17, 2009) (same); *Oakes v. J.F. Bernard, Inc.*, No. 5:11-cv-1006, 2011 WL 6415535, at *6 (N.D. Ohio Nov. 22, 2011), *report and recommendation adopted*, No. 5:11-cv-1006, 2011 WL 6440876 (N.D. Ohio Dec. 21, 2011) (same).

Indeed, this is fundamental to the conditional certification analysis performed by district courts in this Circuit and others. *See, e.g.*, *Monroe v. FTS USA, LLC*, 257 F.R.D. 634, 638-39 (W.D. Tenn. 2009), *aff'd*, 815 F.3d 1000 (6th Cir. 2016) (holding that courts "should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs are similarly situated") (citations omitted); *Brasfield v. Source Broadband Servs., LLC*, No. 2:08-cv-2092-JPM-DKV, 2008 WL 2697261, at *2 (W.D. Tenn. June 3, 2008) (citing cases for this same principle from within the Second, Third, and Fourth Circuits); *Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 279 (D.Minn.1992) (same).

In short, at this stage "all factual questions and issues of credibility must be resolved in favor of the moving party in a motion for conditional certification." *Monroe*, 257 F.R.D. at 638-39 (citation omitted). Defendants' arguments to the contrary are simply wrong.

## II. Individual inquiries are insufficient to defeat conditional certification.

Defendants advance another argument, equally at odds with controlling case law, that resolving the merits of Plaintiff's claims and Defendants' defenses requires individualized inquiries that make the claims unsuitable for collective treatment. This argument, again, is simply wrong.

The Sixth Circuit has unequivocally held that individualized issues do not undermine collective action certification, **even at the decertification stage**. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds in Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) (holding that FLSA plaintiffs can be similarly situated, even under

5

the more stringent, stage-two decertification standard, "because their claims were unified by common theories of defendants' statutory violations, *even if the proofs of these theories are inevitably individualized and distinct*") (emphasis supplied). The Sixth Circuit recently reaffirmed this holding. *See Monroe v. FTS USA, LLC,* 815 F.3d 1000, 1009 (6th Cir. 2016) ("Noting that '[s]howing a 'unified policy' of violations is not required,' we held that employees who 'suffer from a single, FLSA-violating policy' *or* whose 'claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct,' are similarly situated.") (quoting *O'Brien,* 575 F.3d at 584-85).

However, Defendants do not just ignore controlling Sixth Circuit law. They also ignore the weight of authority in this District. *See, e.g.*, *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 769-70 (N.D. Ohio 2015) (conditionally certifying collective action over defendants' objection that merits inquiries are too individualized); *McNelley*, 2009 WL 7630236, at *5 (same). Other courts in this Circuit agree and one has even explained that such arguments are particularly specious in cases alleging unrecorded time "because most FLSA collective actions require plaintiff-by-plaintiff damages calculations." *Potts v. Nashville Limo & Transp., LLC*, No. 3:14-cv-1412, 2015 WL 4198793, at *7 (M.D. Tenn. July 10, 2015). In fact, the *Potts* court notes that it would be "perverse" to permit an employer to rely on its recordkeeping violations to defeat conditional certification. *Id.* at *7 n.8.

Finally, recent U.S. Supreme Court authority and the *Monroe* case cited above upholding collective trial of FLSA off-the-clock claims over defendants' arguments that various merits issues made inquiries too individualized to support certification put any doubt to rest. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) (holding that collective treatment through trial—including reliance on a study based on average donning and doffing times—

appropriate); *Monroe*, 815 F.3d at 1005 (upholding certification and jury verdict for plaintiffs after collective trial on representative proof).

The Supreme Court and the Sixth Circuit expressly rejected several arguments that individualized inquires had undermined certification and collective trial. *Bouaphakeo*, 136 S. Ct. at 1042-43, 1045 (upholding district court finding that different complements of equipment used in different positions by Tyson's employees do not undermine certification, even under the Rule 23 standard); *id.* at 1047 (variances of more than 10 minutes per shift do not undermine representative proof); *id.* (holding that "[r]eliance on [Plaintiffs' expert's] study did not deprive petitioner [Defendants here] of its ability to litigate individual defenses."); *Monroe*, 815 F.3d at 1012 (finding no requirement in FLSA collective actions that "a violating policy . . . be implemented by a singular method"); *id.* at 1017 (holding that collective treatment at trial does not prevent defendants from adequately raising individualized defenses); *id.* (observing that jury credited defendants' arguments that plaintiffs worked less unrecorded time than claimed because it awarded less than plaintiffs sought).

In short, the authority supports only one conclusion: It is irrelevant to collective action certification whether resolving the case on the merits requires an individualized inquiry.

### III. There is no requirement that FLSA plaintiffs show sufficient interest from similarly situated employees to support conditional certification.

Relying on two non-binding cases from outside the Sixth Circuit, and again ***failing to cite to even one of the many cases directly on point from this Court***, Defendants argue conditional certification should be denied because "Plaintiff has failed to produce credible evidence that a class of interested claimants is waiting in the wings." Defs.' Memo. in Opp. at 13. However, showing sufficient interest is not a requirement in this Circuit and the mere fact no similarly situated Assistant Managers have opted into the lawsuit at this early stage is not a barrier to

conditional certification.

In fact, this Court has rejected similar arguments, explaining that requiring a minimum number of opt-ins at this early stage would defeat the very purpose of conditional certification. *McNelley*, 2009 WL 7630236, at *4 ("Defendant has not cited to any authority requiring a minimum number of declarations, nor would such a requirement be appropriate given that the parties have not yet engaged in discovery to identify the class members."); *see also Ivy v. Amerigas Propane, L.P.,* No. 1:13-cv-1095, 2014 WL 3591797, at *3 (W.D. Tenn. July 21, 2014) ("In light of the foregoing [case law], it is the opinion of the Court that the Defendants' assertion that a motion for conditional certification cannot be supported only by a plaintiff's complaint and declaration is without merit."); *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 247 (W.D. Mich. 2011) ("Plaintiffs' failure to provide evidence that potential opt-in plaintiffs' desire to opt-in is not fatal to their motion.").[3]

In fact, because there is no requirement to provide evidence that potential opt-in plaintiffs desire to opt-in, this Court has granted conditional certification based solely on the allegations in the complaint and/or the named plaintiff's declaration. *See Gomez v. ERMC Prop. Mgmt. Co., LLC,* No. 3:13-cv-01081, 2014 WL 1513945, at *1-2 (N.D. Ohio Apr.16, 2014) (granting conditional certification based on plaintiff's affidavit and noting defendant failed to cite case "***mandating the inclusion of other plaintiffs*** or documentary evidence") (emphasis added); *Ribby v. Liberty Health Care Corp.*, No. 3:13-cv-613, 2013 WL 3187260, at *1, *3 (N.D. Ohio June 20, 2013) (granting conditional certification based solely on complaint); *Petersen v.*

---

[3] For this reason alone, Defendants' reliance on *Thompson v. Speedway Superamerica LLC*, No. 08-cv-1107, 2009 WL 130069 (D. Minn., Jan. 20, 2009) (denying certification where there were two plaintiffs and eight opt-ins) and *Silverman v. SmithKline Beecham Corp.,* No. 06-cv-7272-DSF-CTX, 2007 WL 6344674 (C.D. Cal. Oct. 15, 2007) (requiring evidence of more than a minimal number of potential plaintiffs interesting in joining the case) is in direct conflict with the law in this Circuit and therefore completely irrelevant.

*Cleveland Inst. of Art*, No. 1:08-cv-1217, 2011 WL 1230267, at *1, *4 (N.D. Ohio Mar. 30, 2011) (granting conditional certification based on complaint and named plaintiff's affidavit).

Courts in this Circuit are in agreement. *See, e.g.*, *Ford v. Carnegie Mgmt. Servs., Inc.*, No. 2:16-cv-18, 2016 WL 2729700, at *1 (S.D. Ohio May 11, 2016) (granting conditional certification based solely on plaintiff's declaration); *Smith v. Waverly Health Care & Rehab. Ctr., Inc.*, No. 3:12-cv-944, 2013 WL 817266, at *1-2 (M.D. Tenn. Mar. 5, 2013) (same); *Sisson v. OhioHealth Corp.*, No. 2:13-cv-0517, 2013 WL 6049028, at *7 (S.D. Ohio Nov. 14, 2013) (same); *Ivy*, 2014 WL 3591797, at *3 (granting conditional certification based on plaintiff's complaint and declaration); *Rogers v. HCA Health Servs. of Tennessee, Inc.*, No. 3:09-cv-1173, 2013 WL 3224026, at *3 (M.D. Tenn. June 25, 2013) (granting conditional certification based on plaintiff's complaint and declaration despite no "corroborating declaration from any other employee" because FLSA's "broad remedial goal" outweighed "burdens posed by conditional certification").

Moreover, this case demonstrates why such a requirement is inappropriate. Because there are only 86 current Assistant Managers with only one (1) at a store at any point in time, Defendants' arguments about a lack of interest lose much of their force. Defs.' Memo. in Opp. at 1-2. It is very unlikely that Plaintiff's counsel's advertisements would have even been seen by such a sparse group of potential plaintiffs. In fact, where, as here, potential Plaintiffs did not work side-by-side in the same store on a daily basis, imposing a "sufficient interest" requirement would effectively nullify the collective action mechanism.

In short, there is no sufficient interest requirement and Defendants desire to impose one finds no support in the law of this District or the purpose of the collective action mechanism.

**IV. Plaintiff is not required to show the existence of an unwritten policy, and Defendants' self-serving, FLSA-compliant stated policy is irrelevant.**

Again ignoring binding Sixth Circuit precedent and numerous holdings directly on point by this Court, Defendants argue that "[i]n order to ignore True North's written policy prohibiting off-the-clock work, Plaintiffs must provide evidence of an unwritten policy to violate the FLSA that is contrary to True North's lawful written policy and that such unwritten policy occurred 'not because of human error or a rogue store manager,' but because of a 'corporate decision to ignore published, legally compliant policy.'"[4] Defs.' Memo. in Opp. at 6 (quoting *Thompson*, 2009 WL 130069, *2).

This is not the law in this Circuit. First, in the Sixth Circuit a plaintiff is not required to show a policy, unwritten or otherwise, because a plaintiff can meet his minimum burden at this stage by showing his and other similar situated employees' "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585; *see also Monroe*, 815 F.3d at 1009 ("Noting that '[s]howing a 'unified policy' of violations is not required,' we held that employees who 'suffer from a single, FLSA-violating policy' *or* whose 'claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct,' are similarly situated.") (quoting *O'Brien,* 575 F.3d at 584–85); *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015) (same); *Schwab*, 2012

---

[4] Defendants state that Plaintiff admits their written policy is FLSA compliant because Plaintiff relies on Defendants' written policy prohibiting clocking in earlier than five minutes before and clocking out more than five minutes after a scheduled shift. *See* Defs.' Memo. in Opp. at 7. On the contrary, Plaintiff argues that this policy virtually guarantees that the required pre-shift and post-shift price surveys are performed off the clock.

10

WL 1067074, at *2 (same).[5]

Moreover, whether an FLSA-violating policy in fact exists is a merit-based argument which is also irrelevant at this stage. *Schwab*, 2012 WL 1067074, at *5 ("On these facts, it is not at all clear that ***defendants' policy of not compensating for commute time*** [outside the normal commuting area] violated the FLSA. Nevertheless, in light of the fairly lenient standard applicable to this stage of the case that ***forecloses the Court from resolving this factual dispute or making credibility determinations***, the Court finds that plaintiff has made the required modest factual showing necessary to meet the similarly situated requirement.") (emphasis added); *Oakes*, 2011 WL 6415535, at *6 (rejecting defendants' argument that court should deny certification due to failure to show common policy, plan, or practice because "courts do not resolve issues addressing the ultimate merits and do not weigh credibility at the conditional certification stage.").

Moreover, the fact Defendants may have self-serving, FLSA-compliant written policies in place is also irrelevant on conditional certification as this too is an improper merits based argument. *Houston v. Progressive Cas. Ins. Co.*, No. 1:15-cv-1853, 2015 WL 8527339, at *2 (N.D. Ohio Dec. 11, 2015) ("Although defendant vehemently disputes that such a policy exists and even points to ***written policies and affidavits suggesting that the precise opposite policy exists, the Court cannot make merits-based determinations at the conditional certification stage.***") (emphasis added); *see also Rice v. Cellco Partnership*, No. 3;12-cv-1192, 2014 WL 61365, at *2 (M.D. Tenn. Jan. 8, 2014) (rejecting defendant's reliance on written policy prohibiing off-the-clock work because "the Court is not to resolve factual disputes" at the

---

[5] This Sixth Circuit authority shows that both *Pacheco v. Boar's Head Provisions Co., Inc.*, 671 F. Supp. 2d 957, 963 (W.D. Mich. 2009) and *Thompson*, 2009 WL 130069, at *2, relied upon by Defendants, are simply at odds with the controlling law in this Circuit, as this Court recognized in *Waggoner* and *Schwab*.

11

conditional certification stage); *Garrett v. Sitel Operating Corp.,* No. 10-cv-2900, 2011 WL 5827240, at *4 (W.D. Tenn. Nov. 18, 2011) ("[D]efendant's written policy requiring compliance with FLSA provisions does not prohibit certification."); *Musarra v. Digital Dish, Inc.*, No. 2:05-cv-545, 2008 WL 818692, at *4-*5 (S.D. Ohio Mar. 24, 2008) (finding argument "unpersuasive at this stage of the proceedings" that defendants' policies "are legal on their face").[6]

Simply, Plaintiff is not required to show the existence of an unwritten policy and has easily met his burden at this stage by showing that he and other potential plaintiffs are similarly situated because they are unified by common theories of defendants' statutory violations. Sixth Circuit law requires nothing more.

### V. Plaintiff's counsel's Facebook advertisements are ethically compliant and are wholly irrelevant to the question of conditional certification.

Defendants erroneously argue that conditional certification should be denied because Plaintiff's counsel allegedly engaged in improper direct solicitation of potential plaintiffs. This baseless argument should be rejected because Plaintiff's counsel has not engaged in *any* direct solicitation of potential clients and because the two advertisements cited by Defendants comply with all applicable Rules of Professional Conduct governing attorney advertising. Plaintiff's two Facebook advertisements neither prevent class certification nor undermine notice.

Plaintiff's counsel have not engaged in *any* direct solicitation of clients related to this case. As noted in Comment 1 to Rule 7.3 of the Ohio Rules of Professional Conduct, which governs the solicitation of clients by attorneys[7]:

---

[6] On this point, courts across the country are in agreement. *See., e.g.*, *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 569 (D. Md. 2012) ("'[T]he promulgation of written policies, per se, is insufficient to immunize an employer from conduct that otherwise contravenes the FLSA.") (internal quotation marks and citation omitted).

[7] Rule 7.3 of most states' Rules of Professional Conduct governs the solicitation of clients, typically based on Rule 7.3 of the Model Rules of Professional Conduct.

12

> A solicitation is a communication initiated by the lawyer that is directed to a specific person and that offers to provide, or can reasonably be understood as offering to provide, legal services. In contrast, a lawyer's communication typically does not constitute a solicitation if it is (a) directed to the general public, such as through a billboard, an Internet-based advertisement, a web site, or a commercial, (b) in response to a request for information, or (c) automatically generated in response to Internet searches.

Plaintiff's counsel has not directed any communications to any specific individuals concerning this lawsuit; and, therefore, Defendants' claim that Plaintiff's counsel "may have engaged in improper solicitation" is patently false.

Plaintiff's counsel has run two advertisements on Facebook[8] concerning the legal issues addressed by this lawsuit. Plaintiff's counsel directed these advertisements to filling station employees in Ohio, Illinois, and Michigan.[9] Only Facebook knows what specific individuals may have seen the advertisements displayed on their Facebook pages, just as only the Cleveland Plain Dealer knows the identities of its subscribers (who may see the paper's advertisements).

For these two Facebook advertisements, Plaintiff's counsel complied with Rule 7.1 (governing communications about a lawyer's services) and Rule 7.2 (governing attorney advertising) of the Ohio, Illinois, Michigan, and Tennessee Rules of Professional Conduct by including only truthful, non-misleading content; by including the name and office address of an attorney responsible for the content; and by creating and maintaining an internal record of the advertisement, its audience, and its dates of paid publication.

The Supreme Court's longstanding precedent holds that attorney advertisements constitute protected free speech, so long as they are not false, deceptive, or misleading. *See, e.g.*

---

[8] Both advertisements are attached to Defendants' opposition brief. (*See* Doc. No. 21-3).
[9] In brief summary, advertisers on Facebook (including law firms) choose the "audience" for their advertisements by selecting from generic demographic and geographic categories. Facebook then displays the advertisements on the Facebook pages of users whose self-identified demographic and geographic information (confidentially maintained by Facebook) matches the selected audience's characteristics.

*Bates v. State Bar of Arizona*, 433 U.S. 350, 383-84 (1977).  Thus, so long as attorney advertising complies with all applicable Rules of Professional Conduct, Section "216(b) does not require parties to obtain judicial approval before seeking to locate other 'similarly situated' persons." *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 421 (M.D. Ala. 1991).

Plaintiff's collective claims are entitled to conditional certification for all of the previously-argued reasons, and Plaintiff's ethically compliant Facebook ads are wholly irrelevant to that determination.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant Plaintiff's Motion for Conditional Certification, order the issuance of Notice to potential Plaintiffs, and order Defendants to produce a list in electronic and importable format, of the names, addresses, and e-mail addresses of all current and former employees who fall within this class definition to ensure timely issuance of the Notice.

Dated: July 14, 2016                                             Respectfully submitted,

/s/  David W. Garrison
**DAVID W. GARRISON (TN Bar No. 24968)***
**SCOTT P. TIFT (TN Bar No. 27592)***
**JOSHUA A. FRANK (TN Bar No. 33294)***
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
stift@barrettjohnston.com
jfrank@barrettjohnston.com

**JOHN L. MAYS (GA. Bar No. 986574)***
MAYS & KERR LLC
235 Peachtree Street NE
North Tower, Suite 202
Atlanta, GA 30303
Telephone: (404) 410-7998
Facsimile: (404) 855-4066

john@maysandkerr.com

**CHARLES P. YEZBAK, III (TN Bar No. 18965)\***
YEZBAK LAW OFFICES
2002 Richard Jones Road, Suite B-200
Nashville, TN 37215
Telephone: (615) 250-2000
Facsimile: (615) 250-2020
yezbak@yezbaklaw.com

**ROBERT E. DEROSE (OH Bar No. 0055214)**
**MOLLY K. TEFEND (OH Bar No. 0093574)**
BARKAN MEIZLISH HANDELMAN
GOODIN DEROSE WENTZ, LLP
250 E. Broad Street, 10th Floor
Columbus, OH 43215
Telephone: (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com
mtefend@bakanmeizlish.com

\* Admitted *Pro Hac Vice*

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

  I certify that a copy of the foregoing document has been filed with the Clerk and served on counsel for Defendants via the Court's ECF filing system on July 14, 2016.

George S. Crisci (0006325)
ZASHIN & RICH
950 Main Avenue, 4th Floor
Cleveland, OH 44113
Tel: 216/696-4441
Fax: 216/696-1618
Email: gsc@zrlaw.com

*Attorney for Defendants True North
Holdings, Inc., True North Energy, LLC, and
True North Management, LLC*

            /s/ David W. Garrison
            DAVID W. GARRISON
            **BARRETT JOHNSTON MARTIN**
              **& GARRISON, LLC**